Good morning everyone. May it please the court my name is Jennifer Geisler here on behalf of plaintiff appellant Karen Velie. I would like to reserve a few minutes for rebuttal. All right you're responsible for your time but I'll try to remind you. Okay super thank you so much. In this case which involves claims for First Amendment retaliation and equal protection. We believe that the court, trial court, took an extremely narrow view of the allegations in our complaint and basically concluded it was nothing more than harsh words, defamation and that we were... Are you talking of retaliation? Are you talking the First Amendment right to equal access? What are you talking about here? Yes the retaliation claim. Okay. And also the other claim too. I think that what happened was there were other allegations here that were not included in the court's analysis perhaps. So we're not alleging that you know people can't criticize each other in a public forum or anything like that but in this case there was a lot more going on than just that. Well let's start though with okay you claim that first there's a violation for First Amendment right that you're guaranteed equal access to information that county officials distribute to other media outlets right? Yes. Okay it seems to me that Brandsburg doesn't really support that position that it says it does not guarantee the press a constitutional right of special access to information not available to the public generally. So it doesn't completely address it but it does seem to be that there is some support for the government's position that they don't have to give they don't have to give everything that everyone isn't titled to the same and apparently they didn't really view your client very favorably and probably not even that legitimately and so they said well I'm not you know why are we going to give this to a person that's just not gonna risk responsibly report it and be nothing but trouble right? That's exactly it. So what's your best case that says if that's true that they have if it's discretionary that they have to give everything to your client under the And I don't necessarily disagree with that that's why I'm saying we go beyond that because they were denying her access that the public would be afforded not just other news media outlets but I do think that the Quad City Community News Services cases. What specifically was she denied that the rest of the public got? Did she say that in her complaint? Yes. And what is that? So whenever she would try to contact the the county government offices to simply get information she was told that by staffers we are not allowed to talk with you we will be fired we can't return your calls in fact they didn't return her calls they wouldn't give her information that someone else could walk in. How do you know someone else who walks in gets that information? Well she was asking not for privileged or confidential information. Same question. I mean is there from the federal government we know there's there's a FOIA procedure is there such a procedure that applies to the county that she attempted to follow? I don't know if she did. Well if you don't know then what's the allegation? You're trying to tell us that she was denied information that we give it to everybody else but now when I ask you what did she do you don't know so where's the allegation and where in the complaint is that allegation? Sure she would ask for information that such as press releases that were given to other news media outlets that she became aware of after the fact that were not given to her. Well okay you've moved off your original point then because this is information that you say is given to other news outlets not information that's given out to members of the public. Stay focused tell me what exactly it is that she's denied. She was denied any information whatsoever so if she goes into the Hall of Administration and asks to speak with someone from the Human Resources Department or the Sheriff's Department or the DA's office she was told you're Karen Valley in effect we can't talk to you. And how was that how is that transgressing something that she would get as a member of the public? I find it I think that we don't don't tell me you don't know or I find it and think that that's a legal claim. If there is a public information procedure or ordinance or statute that applies to the county and you can point to that and say she followed those procedures and was denied what any other member of the public would get that might be different. She's free to bring a public information request process but that's not what this lawsuit is. So it sounds to me at this point like you are speculating as to what other people would get but haven't told us exactly what she has done that denied her rights that other members of the public would get. For example she requested a report from law that had to do with a criminal act against her and she was told that they didn't have it and then later she was given a report that was redacted modified from what she had been provided the information she had been provided previously. I don't know of you know just what I've seen in general you can't just go in and say I want a report that the general public can't just come in and say they want a report or even if it's your police report the police agencies have a procedure that you have to follow. So I don't disagree with that but I think to be completely shut out of the county government is goes beyond the way that this matter was characterized in the trial court. Okay. What right are you trying to assert? I mean you're not talking about public information and there if there is a legal obligation for the county to give information to the members of the public I have to assume there are legal procedures to pursue. This lawsuit is a claim that somehow your client has a First Amendment right to access to specific in terms of exactly what it is it gives her the entitlement she's claiming. Judge Callahan has pointed out that Supreme Court case law doesn't really seem to support the proposition that anybody who calls herself a reporter is entitled to things and so I'm really I'm not saying that there's not a claim there someplace but I think we need better understanding as to what I hoped for and I'm requesting here is if our allegations are deficient I think we should at least be given the opportunity to amend the complaint. I understand that except usually when there's a request to amend the complaint we are told what it is the amendment would be so we can decide whether it would accomplish anything particularly when the denial appears to be based on the notion of futility and I didn't find in your brief a specification of exactly what today what amendment would cure the problem? Well at least to the issue that your honor is referring to it would have to do with the denial of Ms. Vili to information that's available to the public and other news media outlets and the fact that she was... What specifically? I mean you can't just make that general. Sure and and that's something that we can specify if she went in on such-and-such day and was to do with her going in asking for information about events that are happening in the county. I don't question whether she made requests the question I'm posing is what establishes the so-called entitlement you tell us that everybody else in the public would would be entitled to get this well that's the piece that's missing what is the county public information ordinance or statute that establishes the rights you claim she should have and if that's what her prosecute bring a claim under that public information ordinance how is that a First Amendment claim? Well I think that in relying on the Quad City case and and I I believe that I did cite a local ordinance and it's not on the top of my head but I will check my notes while these folks are arguing. If I can move to the fact that defendants argue that their speech was protected in this case and it's our position that what they did went well above and beyond defamatory statements and harsh words and it's not the type of thing that is protected speech we've talked about the denial of public information press releases targeting her advertisers and threatening them that if they continue to advertise with her they would have difficulty doing business in San Luis Visibo County that strongly implies the misuse of that. We actually have a declaration from a local businessman in San Luis Visibo County who declared that he was told by Defendant Hill not to advertise or support Ms. Velie's business or he would have problems doing his own business in the county. That is a serious situation because he's misusing his power, abusing his power. That implies government sanction that should be prohibited here. We also have alleged that the posting of Ms. Velie's home address, prompting people to go to her home, make threats against her, causing her to fear for her own safety and the safety of her grandchildren whom she cares for. Has she ever filed an assault? Has there been a battery? Assault is a threatened battery. Has she filed those complaints? She has and what happens and that was what I alluded to earlier when she had filed a complaint and when she went to get a copy of the report she got the runaround and when she did get a report the deputy that was helping her said who she had spoken to before recognized that things had been changed in the report and when she had called for help worried about her safety she was given the cold shoulder and had no confidence whatsoever that they would protect her if indeed there was a serious problem so she had to move several times. So this type of situation where she has targeted both her business and her family to censor her reporting in the county of San Luis Obispo. Is there anything in the First Amendment that requires law enforcement to give special protection to reporters? She wasn't asking for special protection and I'm not claiming that that is something that we are alleging. She was just asking for help because she was afraid of what was going to happen to her. So it's our position that we should have an opportunity to amend the complaint, go back down to the trial court and pursue these very important claims so that she can be a reporter without being censored and reign in. Censorship doesn't enter into this. I think the language here is pretty loose. There's no censorship being discussed here. She prints what she wants to print. Now if they don't like what she prints they can respond to it but that's not censorship. Sure but ruining her business by taking away her advertisers and financial support causing her to fear for her personal safety and moving several times that impedes her ability to do her job and report and that is a form of censorship. Is there any evidence, any suggestion or even allegation that links the threats to the individually named defendants? We believe there is, Your Honor. There are postings by Mr. Hill not only on this Facebook page but other social media which perpetuated degrading and humiliating remarks about Ms. Valley and her family. And that's an assault claim against Mr. Hill. Is there an assault claim in this complaint or would this court have jurisdiction over an assault claim? Well we had several state law claims which were dismissed without prejudice by the court so this only concerns the civil rights allegations. So we'll see what happens after Your Honors decide this case. And with that I'd like to reserve the rest of my time. Thank you. Good morning, Your Honors. I'm Frederick Butcher. I'm here on behalf of the County of San Luis Obispo. My colleague Glenn Rothner is representing Supervisor Adam Hill. So how are you splitting? Theoretically 10 for me and 5 for him but I'm not sure we need the full time in any event but we'll see. Okay. If that's your understanding when you're at 10 I'm stopping you. Okay. And if we have additional questions you'll still get 5. Okay? Thank you. Because I know people sit at the table and they're all nervous as they watch their colleague eating away at their time. Screw up. So you will get 5. Call again. I do want to pick up I guess on a couple of the issues that were discussed. One relating to what the nature of the claim is here and the second relating to the amendment request. It's absolutely clear that the claim that is being made here is one to a supposed right to equal access. That with other media. The claim that was alleged in the complaint itself in paragraph 19, which is in ER 107, is that Veli has been and continues to be denied equal access to press releases, is denied equal access to county officials and their staff by phone, is not allowed to speak to county official or staff by phone, and is not given substantive responses to her written request for information unlike other news reporters, news agencies, all in violation of her first, fourth, fifth, and 14th Amendment rights. So the problem at bottom is that there is no constitutional right to equal access. And the courts have held that. The Supreme Court has made that clear in cases, for example, in Hutchins and in Brandsburg. And we have decisions from other courts of appeals and district courts. For example, the Snyder v. Ringgold, the Raycom case. Let's say you prevail on that. Yeah. That doesn't mean she can't state a retaliation claim, though. Isn't that correct? Well, I mean, they're separate claims. They're different claims. We think independently she also can't state a retaliation claim because her retaliation claim. If she does, she can't state a First Amendment claim. Right. So the retaliation. That's separate. Yes, I agree. I don't think that that was clear from her briefing, from the complaint, but it was clear from the briefing and the way the trial court, the district court, analyzed it. There's sort of two separate claims here. One is a naked equal protection First Amendment claim that she's been denied this access. On the equal protection claim, there's only one heading in the single heading in her opposition to your motion to dismiss. So I'm assuming you're taking the position that was waived. That was waived, and the district court made that clear as well. But I'm saying the nature of her pure First Amendment claim is really this kind of equal access slash equal protection type of theory that she's been denied material that others have been given, and therefore that's it. The second is this First Amendment. She hasn't been able, though, to amend, correct? I'm sorry? She's never been able to amend. Well, she was not given leave to amend by the district court. She's had several opportunities to amend. But I'm just saying, okay, so we're supposed to look at it. So basically, to me, for you to prevail on that point, you have to tell me that there's no way that amendment could have a result in a claim. That's correct. And that's what the district court found, and I think you are supposed to defer to the district court's judgment in this respect as well. Well, it's the only thing that I ask. I was a trial judge, and I get this, that there's a difference between when you look at something and you say this dog don't hunt, this isn't a very good case, as opposed to you can never state a claim. So tell me why she absolutely, as a matter of law, cannot state a claim on because there was a little bit of throwing things against the kitchen sink. Yes, a fair amount of that. And so the reason is because taking the two claims that she has, the first simply does not state a legal claim, no matter how much you dress it up with what the information is. Well, let me pause on that because I agree as to most elements, but there is the allegation that you read with regard to press releases and being denied the same thing that's given to everybody else. I don't know. I assume the county probably emails them out now. Different people within the county have a, I mean, we can go into the facts, but different people have their own list to whom they send releases. Sometimes it's just in response to somebody requesting to be on the list. Interestingly, Ms. Velie never requested to be on Supervisor Hill's list, but I'm not sure that if she had, he would have voluntarily sent them out anyway. Look, it's not a decision to our court, but the case out of Hawaii, which rings to me because it's my neighborhood. Correct, sir. Beruccia v. Fossey. At that point, the court, the district court, drew the line between having to answer questions of a given reporter and denying him the ability to be there to report on whatever it is the mayor said at the news conference. And that line would suggest that maybe if these press releases are generally sent out, is denying her the press release more like not letting her attend the press conference? I don't think so. Denying the press release is the distinction that I think Beruccia made, which has been followed in the other cases, is that you can't deny somebody essentially access to a public forum. It's more in those traditional lines. So when the mayor used the city hall and his office to hold public meetings, you can't pick and choose as to who can attend those meetings, at least not without some compelling interest, which was not stated there. Press releases are really just another means of communicating voluntarily with the outside world. You could have your secretary call up every reporter or every individual that you wanted to speak to and say, hey, we've got the following information for you. That's clearly, by the case laws, something that says that you don't have a right to equal access to that because that is just the speech of the government official deciding whom he wants to speak to and whom he wants to receive his messages. A press release is no different than that. It is simply a voluntary statement being made by a government official, selectively sent out to those people to whom he or she wants to communicate. So I think that is covered completely by the other cases that say that there is no right to equal access to that kind of information. Well, it's being sent out presumably through government resources. I don't think it's any different than using a government telephone. So how is that? But a government telephone I guess on one level requires affirmative action in taking somebody's time, sending out an e-mail release or adding somebody's e-mail address to a release that goes out and may well be posted on a website. How is that really different from using the space in the mayor's office for getting a news conference? Because I do think it is a voluntary act that does take time. It's not a question of using government resources. Inviting this reporter was a voluntary act, and I didn't want to do that. I'm sorry? Mayor Fossey in that case would have said, inviting the reporter is a voluntary act that I don't want to do. Well, no, he didn't need an invitation. It was a public event that was open to all. The press releases are by definition not sent to all. If they are posted, yes, they would be a public thing, and if for somehow they decided like in the, frankly, I think it's similar to this tweeting case that involved President Trump that was out of New York. If there was a public posting and he said, we are not allowing Ms. Velie to access the public documents that are there, publicly posted for all the rest of the world to see, that would be the equivalent of the denial of access to a public forum. But a press release is something very different. A press release is the affirmative act of deciding who you want to tell some news to. It's no different than deciding you want to have an exclusive interview with a particular reporter. It may be a lot easier, and it may be a written form rather than a verbal communication, but it is that same kind of voluntary act where you get to pick and choose to whom you want to send your message. So that is the essence of her complaint. And to get to the point that you were asking about, there is a public records act in California, a requirement that you have to issue, you know, comply with requests for public documents. The essence of the complaint here is that what happened was that all the government officials in San Luis Obispo County said, we don't trust you to give you any verbal responses. We want everything that you have because you twisted everything that we say and everything that you've claimed. We want you to submit things in writing, and we will follow the public records act in responding to your requests. And what she's complaining about is that not everybody has to go through that process. But there's no complaint that she's not getting that access to that information through the process that's provided by state law. I thought I heard her say that she was not getting anything. That's not true. She said she gets them delayed, and she can get them through the public records process, which is her right under state law. And if she weren't, then that would be a state law claim that she could bring under state law. But it's not a federal claim. Back to the amendment, if I can, because I don't want to ruin Mr. Rothner's time. Well, about the things that she's alleging, that they interfered with her advertising, that they caused her to be subject to threats and she had to move, would those be more appropriately handled by your co-counsel? He's perfectly capable of handling everything. We've divided it up. I think we're both prepared. It's as to Hill, supposedly. It is as to Hill, if he's comfortable. But the retaliation aspect of it is the second part of the claim. And, again, there's no allegation, and she cannot make an allegation, that there was any government sanction against her client. So the problem is, again, the futility isn't that she's – the problem with the amendment isn't that she sort of misstated a word or two here or that she didn't put an allegation into the complaint that she now has. The problem is that the essence of what she is complaining about, the legal theory, doesn't fly. And, in fact, even when she asks for the leave to amend in her brief here – You need to bring it to a close. She says, if you believe that these are viable claims, we ask permission to leave to amend. It's a conditional thing that she herself acknowledges you have to do it. And, finally, as you pointed out, she has never yet stated what it is exactly she would amend that would change the nature of her complaint to make it a viable one. And with that, I will let Mr. Rothers. All right, and then he has five minutes. So I would like to begin by clarifying what the California Public Records Law is. It is known as our Public Records Act. It applies to all agencies, state, local, special districts, school districts, and it's found in California Government Code Section 6250. But I guess what concerns me here is can she state something on retaliation here? Is it futile as to that amendment? It is. In regards to – because we can't decide what's true or not true. But if there were allegations that they're interfering with their advertisers, they're doing – that your client's doing things to cause people to threaten her family, to do all of those things, then it seems to me maybe that could allege a cause of action. Not here. Maybe it hasn't been done, but maybe that could be. So tell me why. I don't think so. But, first of all, I want to be very clear. The allegations don't directly allege that he threatened her family or he encouraged people to do. The allegation is quite indirect and removed. It is that there were social postings of a friend of his that may have led people to do that. That's all. So let's just say that's not sufficient here. But if those allegations can be made, if they can be beefed up, if facts can be added, why can't there be leave to amend? They can't because, as my colleague was explaining, the critical element there is that there has to be some government sanction or prohibition for that claim to be viable. We've discussed that in our brief. And what she alleges, and there's been no change from the meet and confer we had to the briefing in this court, to the argument in this court, there is no suggestion that the county imposed a sanction or a prohibition on Ms. Velie doing business in or with the county. And the allegation in the complaint and in the briefing is not that she would have trouble doing business with the county. It was that she would have trouble doing business in the county. And the only references to specific allegations, not very specific. Well, can the county threaten a person's advertisers? There is nothing wrong with my client telling people in the community that he knows that advertise on her website. She is an unreliable reporter of the news. You should not be advertising on her site. Is there something wrong with somebody, Mr. Hill, saying, and if you do, good luck in ever getting another permit, building permit, zoning, anything else, and maybe your license won't be renewed next year either, or maybe the inspectors will be at your shop every week. Does that cross the line? We don't have specific allegations. We don't. We never have. It seems to me there is a line out there someplace. I mean, we've all seen movies where the local officials terrorize the hero of the movie. And is there a line that if allegations were stated to that effect, is there a line that could be crossed? Just for the sake of this theoretical conversation, I would say, yes, there is a line. But the line, according to case law, is to the other side of a sanction or a prohibition, not the threat, as Judge Clifton, you have described it. Would that be called official oppression? Official what? Oppression. Where a person is using his or her office as a way of tamping down. I'm not familiar with the official oppression doctrine. I mean, it's just simple common law thinking. I'm not talking about some statutory thing. Well, there may be a common law claim there. I'm not suggesting that. I'm just following up on Judge Clifton's remarks. It's not a comforting thought if people say, well, our employees can just go and, you know, when someone's causing us problems, just go out and destroy them. It isn't a comfortable thought. I'm pretty sure it's not legal at some level. Well, it's probably not legal as a matter of California common law, and there were several common law claims to that effect, interference with contractual relations, intentional infliction of emotional distress. The question for this court is whether there was anything pled that or can be pled that establishes a Section 1983 claim for retaliation. And the case law is very clear that to do that, you have to have an official sanction or prohibition. One supervisor cannot impose an official sanction or a prohibition. That takes the Board of Supervisors as a whole, and there is no suggestion anywhere in this case that that has happened or that that might happen if leave to amend were granted. We think that the district court was quite right on the question of futility. There has never been a hint of any allegation or possible allegation that would establish a right of equal access or establish a retaliation claim because the elements have never been hinted at, and so an amendment would be futile. All right, thank you. Your time has expired. Thank you for your time. Thank you. For my rebuttal, I'd just like to address a few remarks made by counsel. I think a line was crossed here. It's not okay. It's not legal to actually threaten a business person that they're going to have a hard time doing business in San Luis Obispo County if they don't . . . To answer your question, why didn't you amend . . . I'm not suggesting that you would trial counsel, but why didn't you amend the pleadings and assert more specifically, let's say, your 1983 claim under retaliation or whatever other causes of action and link them to 1983 as opposed to your First Amendment? I would like the opportunity to amend the complaint. What would the amendment be? Well, obviously what I say here today, hopefully what I do if I get the opportunity . . . You've had a lot of time. You filed this lawsuit. You've had a lot of time to think about this, and you've had time to prepare for oral argument, and you're asking for leave to amend. Sure. I cannot be surprised that this Court is saying what would the amendment look like. And I didn't mean to . . . Because we don't like to waste time, because if it's futile, you're out. So what would it look like? Sure, and I didn't mean to . . . Hopefully I didn't express surprise at that question. It's not surprising we want to amend. We're going to be polished up like a pleading, but what's the substance of what this amendment would say? So we would add more details in terms of the denial to public access. We would include factual allegations supporting what information was denied to her that was available to the public, and indicating more specifics as to who, what, and where that happened. We would also add more . . . Would you allege that, in fact, your client followed the California public records law? Yes, and I was looking at my notes from earlier, and she did indeed file requests for public information under the Public Records Information Act. And she was at times given some information, and at times told, sorry, we deleted that. We don't keep our emails for longer than . . . See, that raises a whole other set of issues, because that doesn't by itself demonstrate any singling out of your client. We get lots of FOIA lawsuits by people complaining they didn't get what they think they're supposed to get under FOIA, and it turns out the government doesn't have to respond to all those things. That's a whole . . . And this isn't a Public Records Act lawsuit, which your client could bring presumably in state court. So what is it that makes this a potentially 1983 action? Sure. And I believe it's the fact that she was shut out of county government in San Luis Obispo. People were told, we can't talk to you. We're going to lose our job. We can't return your calls. We can't give you the information that you want. None of that connects up. I want to make sure you have a shot here, but we've already expressed skepticism that there is a First Amendment equal access for all reporters right. So we're looking for something more than that, and just to give me a generic statement, she was shut out of that, and I don't know what the affair is now. I'll get you right on the bus. But there's not substance there. So what exactly constitutes the substance? Sure, and we would include information or factual allegations about her contacting the DA's office, for example, and not being given information on certain dates and times about certain topics that would be available to the public. Information that she's requesting from the Sheriff's Department or human resources. We would add details about that. And as far as the threats against other businesses, I disagree respectfully. Mr. Hill, as a supervisor, is a very powerful person, and he could certainly follow through on the threats he made to local businesspersons about making it tough to do business in San Luis Obispo County. And I think that we should be given the opportunity to amend, because this is a very important issue. The government sanction here is Supervisor Hill using his position to get what he wants and oppress or censor local reporters that he doesn't like or anybody else. But I think in this case, it's very important that Ms. Valley be given the opportunity to amend. We had no chance whatsoever to do that. I'm not quite sure I understand this. The opposing counsel said you had plenty of opportunity to amend, and at some point the court did not permit you to amend. I didn't give you leave to amend. Now, what's going on here? Is it that you could have amended and you waited until a point where there was some scheduling order in place and you failed and you could not get the court to agree? What's going on with this procedural thing here? Why could you not amend? Yeah, I don't appreciate that either. We filed the complaint, and they immediately filed a motion to dismiss and a special motion to strike, which we responded to. So we weren't given the opportunity to amend. Well, you could have filed a proposed amended complaint, right? At that point. Sure. I mean, we – To give the court notice of if you find – if you're going to grant the 12b-6, this is what we would say. You could do that. Nothing prevented you from doing that, right? I suppose we could have done that. But also what we did was we had to respond to a special motion to strike and submit a lot of evidentiary information, declarations. Was that on anti-slap stuff? Yes, Your Honor. And that was very labor-intensive. But everything that we submitted has the details that would be used to amend the complaint, which includes the declaration from this local businessman about being – Well, even that's pretty unspecific. And your brief to us didn't specify what amendments. And we talk to you now. It's pretty unspecific. So it's frustrating. There may be a claim out there that could survive scrutiny at the pleading stage, but it's still not very precisely defined. I think it's important enough that we should be given at least one opportunity to amend the complaint, which one is normally provided, at least in my experience. Okay. I think we have your argument in mind. This matter will stand submitted. Thank you very much. The last matter on calendar is the Center for Auto Safety v. Chrysler Group 17-55269. That's been submitted on the briefs and will be submitted as of this date. And then the final matter on calendar was dismissed, 17-55327. Thank you. Court is in recess until tomorrow at 9 o'clock. All rise. Court for this session stands adjourned.
judges: Clifton, Callahan, Hoyt